UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND L GOLDEN and RODNEY
BRISTOL BERENS, as Trustees of the AMS
Sapere Aude Trust,

               Plaintiffs,

       -against-

CPI ASSOCIATES, INC.,

             Defendants.

**ORDER**

17 Civ. 6856 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this diversity action, Plaintiffs Henry Guy and John Moore III – in their capacity as trustees of AMS Sapere Aude Trust – sued Defendant CPI Associates, Inc., a New York-based accounting firm, for accountant malpractice/professional negligence, negligent misrepresentation, and breach of fiduciary duty.[1]  CPI has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  For the reasons explained below, CPI's motion will be granted in part and denied in part.

---

[1]  In a May 17, 2018 letter (Dkt. No. 23), Plaintiffs' counsel informed the Court that Guy and Moore were replaced as trustees by Rodney Berens and Raymond Golden.  On May 29, 2018, the Court granted Plaintiffs' motion, pursuant to Fed. R. Civ. P. 25(a)(3), to substitute Berens and Golden for Guy and Moore as Plaintiffs.  (Order (Dkt. No. 28))

**BACKGROUND**

I.  **FACTS**[2]

    A.  **The Trust and Its Interest in Verdere**

          Verdere S.á r.l. ("Verdere") is a Luxembourg-based <u>société</u> <u>à</u> <u>responsabilité</u> <u>limitée</u>, or limited liability entity.  (Cmplt. (Dkt. No. 1) ¶ 13)  When Verdere was first created, it had one owner:  the Sapere Aude Trust Reg. (the "Old Trust").  (<u>Id.</u> ¶ 14)  Verdere's sole asset was stock in an unnamed company (the "Company").  (<u>Id.</u>)  In 2010, Verdere filed a check-the-box election with the Internal Revenue Service ("IRS") on Form 8832 (titled "Entity Classification Election"), classifying itself as a single member "disregarded entity" for federal tax purposes.  (<u>Id.</u> ¶ 15)

          In October 2010, four new trusts were created from the Old Trust.  (<u>Id.</u> ¶ 16)  The new trusts were created for the benefit of Andreas Maximilian Stenbeck ("Max") and his three siblings.  (<u>Id.</u> ¶¶ 11, 16)  One of the newly created trusts is the AMS Sapere Aude Trust (the "AMS Trust") – an <u>inter</u> <u>vivos</u> trust created for Max and his descendants.  (<u>Id.</u>)  Another newly

---

[2]  The facts are drawn from the Complaint and are presumed true for purposes of CPI's motion to dismiss.  In support of its motion, CPI has submitted a declaration that asserts facts outside the pleadings and attaches four exhibits.  (Dkt. No. 31)  Where, as here, a district court considering a motion to dismiss is "presented with matters outside the pleadings," the court has "two options." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 154 (2d Cir. 2002).  It may either "exclude[] the extrinsic documents" or "convert the motion to one for summary judgment," giving the parties adequate notice and a chance to "submit the additional supporting material contemplated by Rule 56." <u>Id.</u>

Here, this Court will not convert CPI's motion to dismiss into one for summary judgment, because no discovery has been taken, and "summary judgment motions prior to discovery are disfavored." <u>GMA Accessories, Inc. v. Croscill, Inc.</u>, No. 06 Civ. 6236 (GEL), 2007 WL 766294, at *1 (S.D.N.Y. Mar. 13, 2007); <u>Hellstrom v. U.S. Dep't of Veterans Affairs</u>, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").  Accordingly, in resolving CPI's motion to dismiss, this Court has not considered CPI's declaration and the exhibits annexed thereto.

created trust (the "Sibling Trust") was created for the benefit of one of Max's three siblings (the "Sibling"), whom the Complaint does not identify. (Id. ¶ 16) As a result of these changes, the AMS Trust and the Sibling Trust became Verdere's owners. (Id.)

Later in 2010, Max and his Sibling each contributed to Verdere Company shares that they personally owned. (Id. ¶ 17) As a result, Max and his Sibing joined the AMS Trust and the Sibling Trust as owners of Verdere. (Id.) The AMS Trust at that time held a 40 percent equity interest in Verdere. (Id.)

In the following years, Verdere's four owners "made additional Company [share] contributions to Verdere." (Id. ¶ 18) In exchange for contributing additional Company shares, the four owners received "income sharing loans . . . and interest free loans . . . associated with the Company shares." (Id. ¶ 19)

### 2.   CPI's Preparation of the Trust's Federal Tax Returns

CPI is an accounting firm that specializes in tax matters involving trusts and estates. (Id. ¶¶ 1, 7, 20) Plaintiffs Henry Guy and John Moore III ("Trustees"), in their capacity as trustees of the AMS Trust, retained CPI in 2012 to prepare the AMS Trust's federal income tax returns and to provide other tax and accounting services. (Id. ¶¶ 1, 21)

The "parties understood that CPI was to perform ongoing work until such time as someone determined that it would no longer carry out services for the [AMS] Trust or the related entities; it was understood that the relationship would continue, as a level of trust . . . developed through time in CPI's work." (Id. ¶ 22) Thus, the "[AMS] Trust provided financial information to CPI on a continuing basis." (Id. ¶ 23) "Throughout the years that CPI provided services to the [AMS] Trust, it . . . asked for, and received, information relating to Verdere's financial information, the [income sharing loans] and [interest free loans]." (Id. ¶ 33)

3

Because the AMS Trust had an equity interest in Verdere, an understanding of Verdere was necessary for CPI to prepare the AMS Trust's tax returns.  (Id. ¶ 26)  The Complaint sets forth communications between CPI employees about Verdere, including whether it should be taxed as a partnership or a corporation.  In a January 2, 2013 memorandum to CPI employee Lee Robins,[3] for example, CPI accountant Donald Brophy reports that, "[a]s near as I can tell, [a société à responsabilité limitée ] is something akin to an S-Corp that is taxed like a partnership.  A formal determination of how income from the SARL should be taxed in the U.S. should be made by trust counsel."  (Id. ¶ 26)

On September 12, 2013 – eight months later and fifteen days before CPI signed the AMS Trust's tax return – Brophy sent the following email to Trustee Guy and Jay Murray (a financial manager working with the Trustees):

> We may have gone over this ground before but if so I cannot find any documentation of the discussion(s).
>
> The AMS Sapere Trust has a 40% interest in the Verdere SARL.  Depending upon the jurisdiction it was formed under, an SARL can be deemed the foreign equivalent of a US corporation or an LLC/partnership.  The foreign law characterization of an SARL determines how the SARL's income should be reported for US tax purposes.
>
> . . . . An SARL that collects dividends and interest, as the Verdere SARL does, would ideally not be a corporation.  That would toss the SARL's owners into the Subpart F/Form 5471 reporting regime for investment income earned in a controlled foreign corporation.  Before reporting the income from Verdere in the AMS Sapere Trust we must first nail down its foreign law characterization: corporation or partnership/LLC.
>
> Please send us a judgment.

(Id. ¶ 27)

---

[3]  The Complaint does not disclose Robins' position at CPI.

The next day, before receiving any response to his email to Guy and Murray, Brophy sent another message to them stating the following:

> In all likelihood, Verdere will be taxable as either a Controlled Foreign Corporation ["CFC"], subject to the Subpart F reporting rules . . . or it is a Passive Foreign Investment Company ["PFIC"] which has its own breed of unfriendly requirements. The foreign law characterization issue is one best left to legal counsel.

(Id. ¶ 28)  In this message, Brophy did not mention a partnership classification as a possibility.

(Id.)  Brophy added that "'[w]hether we have a CFC or a PFIC' depended on a Verdere owner's foreign or domestic status."  (Id. ¶ 29)

In a September 18, 2013 email to Guy and Murray, Brophy stated that, "'[f]or the moment, we are stuck' behind the owner's status as being foreign or domestic."  (Id. ¶¶ 28, 30) He reiterated that the

> answer [to that question] will determine whether we report the SARL as a CFC (controlled foreign corporation) or PFIC (passive foreign investment company) for US reporting purposes.  Absent an answer, we would default to CFC . . . . If you cannot say with certainty . . . , please put the question to someone in Europe.

(Id. ¶ 30)  Later that day, Trustee Guy answered Brophy's question.[4]  (Cmplt. (Dkt. No. 1) ¶ 31) Because Brophy had represented that the answer to this question would be determinative, Trustee Guy believed that CPI had all information necessary to decide how to classify Verdere, and that advice from counsel was no longer necessary.  (Id.)

### 3. Discovery of Errors in AMS Trust Tax Returns

In March 2015, Max died unexpectedly at the age of 30.  (Id. ¶ 12)  After his death, the Trustees engaged tax and accounting professionals to review the AMS Trust's tax returns.  (Id. ¶¶ 36, 37)  That review disclosed several issues.  (Id. ¶ 35)

---

[4]  The Complaint does not disclose what answer was provided, but CPI's brief states that Trustee Guy confirmed that one of the Verdere owners – Christina Stenbeck, presumably the Sibling – is a U.S. citizen.  (Def. Br. (Dkt. No. 30) at 8)

First, as noted above, in 2010, Verdere had represented to the IRS that it was a single-member disregarded entity.  (Id. ¶ 38)  After the new trusts were created in October 2010, however, and Verdere received Company shares from Max and his Sibling, Verdere no longer had a single owner; it instead had four owners:  the AMS Trust, the Sibling Trust, Max, and the Sibling.  (Id. ¶¶ 17, 38)  Federal tax regulations state that where "[a] single member entity disregarded as an entity separate from its own is classified as a partnership when the entity has more than one member."  (Id. ¶ 39) (quoting 26 C.F.R. § 301.7701-3(f)(2) (emphasis in Complaint omitted).  CPI did not mention this regulation to the Trustees, and CPI incorrectly classified Verdere as a controlled foreign corporation instead of a partnership in the AMS Trust's tax returns for 2012, 2013, and 2014.  (Id. ¶¶ 35, 40)

Second, in the AMS Trust's tax returns for these same years, CPI reported that Verdere had allocated 40 percent of its income to the AMS Trust based on the notion that the AMS Trust had a 40 percent interest in Verdere.  (Id. ¶ 45)  But while the AMS Trust at that time held a 40 percent equity interest in Verdere, the income allocation to the AMS Trust was lower than 40 percent because of the income sharing and interest-free loans that Verdere's owners received for their contribution of Company shares to Verdere.  (Id. ¶¶ 19, 45-46)  After accounting for these factors, the proper income allocation to the AMS Trust was 33.5 percent for 2012, 34 percent for 2013, and 34.5 percent for 2014.  (Id. ¶ 46)  Because CPI failed to account for the effect of income sharing and interest-fee loans on the AMS Trust's income, CPI claimed more income and deductions than was appropriate in the AMS Trust's returns.  (Id.)  CPI made these errors even though it consistently had access to the underlying financial statements related to Verdere, including information about the income sharing and interest-free loans.  (Id. ¶¶ 33, 47)

6

Finally, under the applicable trust agreement, the AMS Trust was required to distribute all net income, at least quarterly, to the AMS Trust's income beneficiary.  At all relevant times, the AMS Trust income beneficiary was Max.  (Id. ¶ 49)  Trust distributions to a beneficiary – and the corresponding deduction that a trust may claim for these distributions – are limited to "fiduciary accounting income," which, here, was less than the taxable income allocatable to the AMS Trust.  (Id.)  CPI claimed a deduction for all taxable income allocatable to the AMS Trust, however rather than the "fiduciary accounting income."  (Id.)  Because CPI claimed deductions for income never distributed to Max, the AMS Trust underpaid its taxes.  (Id. ¶ 50)

In total, CPI's errors caused an income tax deficiency of about $4 million.  (Id. ¶ 53)  The Trustees had to arrange for amended returns to be prepared to correct the errors, and in December 2015, the AMS Trust filed amended returns for tax years 2012, 2013 and 2014. (Id.)  Because of CPI's errors, the Trust paid $243,494 to the IRS in interest and penalties.  (Id. ¶ 54)  The Trust also paid $360,000 to accountants and legal counsel to investigate and correct CPI's errors.  (Id. ¶ 55)

**B.**    **Procedural History**

The Complaint was filed on September 8, 2017.  The Trustees allege claims of accountant malpractice/professional negligence, negligent misrepresentation, and breach of fiduciary duty against CPI.  (Cmplt. (Dkt. No. 1))  CPI has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Def. Br. (Dkt. No. 30))

## DISCUSSION

### I.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pleaded factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id.  Moreover, a court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  When a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" – dismissal is appropriate. Twombly, 550 U.S. at 570.

### II.   ANALYSIS

#### A.   Negligent Misrepresentation and Breach of Fiduciary Duty Claims

As discussed above, the Complaint pleads claims for accountant malpractice/professional negligence, negligent misrepresentation, and breach of fiduciary duty. (Cmplt. ¶¶ 57-62)  CPI contends that Plaintiffs' negligent misrepresentation and breach of

8

fiduciary duty claims must be dismissed, because they are duplicative of Plaintiffs' accountant

malpractice/professional negligence claim.  (Def. Br. (Dkt. No. 30) at 17-18)[5]

               Under New York law, a plaintiff may not proceed on negligent misrepresentation

and breach of fiduciary duty claims where those claims are premised on the same facts as a

professional malpractice claim.[6]  See Franzone v. Lask, No. 14 Civ. 3043 (GHW) (GWG), 2016

WL 4154276, at *7 (S.D.N.Y. Aug. 5, 2016), report and recommendation adopted sub nom.

Franzone v. Susan Chana Lask, Esq., 2016 WL 4491730 (S.D.N.Y. Aug. 25, 2016) ("Claims of

negligence and breach of fiduciary duty that are predicated on the same factual allegations and

seek the same damages as those supporting a legal malpractice claim, are duplicative and must

be dismissed.") (internal quotation marks omitted); see also, e.g., Nordwind v. Rowland, 584

F.3d 420, 432-33 (2d Cir. 2009) ("Under New York law, where a claim for breach of fiduciary

duty is 'premised on the same facts and seeking the identical relief' as a claim for legal

malpractice, the claim for fiduciary duty 'is redundant and should be dismissed.'") (quoting

Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267 (1st

Dep't 2004)); Pennington v. D'Ippolito, No. 18 Civ. 5799 (CS), 2019 WL 6498346, at *4

(S.D.N.Y. Dec. 2, 2019) ("[I]t is well settled that negligence claims that are based on the same

allegations and seek the same relief as malpractice claims 'must be dismissed as duplicative.'")

(quoting Paladini v. Capossela, Cohen, LLC, No. 11 Civ. 2252, 2012 WL 3834655, at *5

(S.D.N.Y. Aug. 15, 2012), aff'd, 515 F. App'x 63 (2d Cir. 2013)).

---

[5]  Citations to page numbers of docketed materials correspond to the pagination generated by this District's Electronic Case Filing ("ECF") system.

[6]  Because the parties agree that New York law governs their dispute (Def. Br. (Dkt. No. 30) at 16; Pltf. Opp. (Dkt. No. 32) at 24), this Court applies New York law.  See Stephens Inc. v. Flexiti Fin. Inc., No. 18-CV-8185 (JPO), 2019 WL 2725627, at *4 n.3 (S.D.N.Y. July 1, 2019) ("Both parties agree that New York law applies to this case, and so the Court assumes its application as well.").

Here, Plaintiffs do not dispute that their professional malpractice claim arises from the same facts and seeks the same relief as their negligent misrepresentation and breach of fiduciary duty claims. Instead, Plaintiffs argue that it would be "premature to dismiss the fiduciary duty and negligent misrepresentation claims as duplicative," given CPI's argument that it acted merely as the Trust's "tax preparer" rather than as its accountant. (Pltf. Opp. (Dkt. No. 32) at 27) Although the Trustees dispute CPI's assertion, they contend that it is "unclear at this juncture what the effect on the malpractice claim would be if the Court eventually determines that CPI was a tax preparer rather than an accountant." (Id.) Implicit in the Trustees' argument is the notion that a finding that CPI acted as a mere tax preparer could be fatal to Plaintiffs' professional malpractice claim, while Plaintiffs' negligent misrepresentation and breach of fiduciary duty claims would remain viable.

As an initial matter, CPI's tax preparer argument is directed at Plaintiffs' breach of fiduciary duty claim, and not their professional malpractice claim. (Def. Br. (Dkt. No. 30) at 18) CPI argues that tax preparers do not owe a fiduciary duty to their clients, and accordingly Plaintiffs' breach of fiduciary duty claim fails. (Id. (citing Carnegie v. H&R Block, Inc., 269 A.D.2d 145, 147 (1st Dep't 2000) ("[T]ax preparation services and basic tax advice . . . did not . . . give rise to any fiduciary duty."))

Moreover, neither side has cited authority suggesting that an accountant who prepares tax returns is not subject to professional malpractice claims. Indeed, the case law is to the contrary. See, e.g., Cuccolo v. Lipsky, Goodkin & Co., 826 F. Supp. 763, 771 (S.D.N.Y. 1993) (denying defendants summary judgment with respect to a "cause of action [that] alleges that the defendants committed accountant malpractice in the preparation of plaintiffs' 1986, 1987 and 1988 tax returns"); JAG Orthopedics, P.C. v. AJC Advisory Corp., 48 Misc. 3d 1213(A), 18

N.Y.S.3d 579 (N.Y. Sup. 2015) (denying motion to dismiss accounting malpractice claim where defendants were "simply hired to prepare plaintiff's income taxes, not to audit plaintiff's books or to act as bookkeepers").

In sum, there is no case law support for the Trustees' suggestion that a finding that CPI acted in a tax preparation capacity would be fatal to Plaintiffs' professional malpractice claim. Dismissal of Plaintiffs' negligent misrepresentation and breach of fiduciary duty claims as duplicative of Plaintiffs' professional malpractice claim is thus proper. See Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, LLP, No. 11 Civ. 5108 (PKC), 2015 WL 5158477, at *6 (E.D.N.Y. Sept. 2, 2015), aff'd sub nom. Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, L.L.P., 662 F. App'x 33 (2d Cir. 2016) ("'Under New York law, where claims of negligence, . . . breach of fiduciary duty, [or] negligent misrepresentation . . . are premised on the same facts and seek identical relief as a claim for legal malpractice, those claims are duplicative and must be dismissed.'") (quoting Joyce v. Thompson Wigdor & Gilly, LLP, No. 06 Civ. 15315 (GWG), 2008 WL 2329227 (S.D.N.Y. June 3, 2008)).

### B. Professional Malpractice Claim

#### 1. Statute of Limitations

CPI argues that Plaintiffs' professional malpractice claim is – at least in part – time-barred. (Def. Br. (Dkt. No. 30) at 9-10, 14-17)

"The statute of limitations is an affirmative defense on which the defendant bears the burden of proof." Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co., No. 09 Civ. 9802 (RJS), 2010 WL 1838730, at *2 (S.D.N.Y. May 4, 2010). "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160,

162 (2d Cir. 1989).  "[I]t is well-established that a statute of limitations defense may only be resolved on a preanswer motion to dismiss where the complaint alleges specific information to permit such a finding."  New York v. W. Side Corp., 790 F. Supp. 2d 13, 28 (E.D.N.Y. 2011).

Accounting malpractice claims have a three-year statute of limitations.  N.Y. C.P.L.R. § 214(6).  Such claims "'accrue[] upon the client's receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice and, as a consequence of such reliance, can become liable for tax deficiencies.'"  Arnold v. KPMG LLP, 334 F. App'x 349, 351 (2d Cir. 2009) (quoting Ackerman v. Price Waterhouse, 84 N.Y.2d 535, 541 (1994)).  Put differently, "[t]his is the time when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court. . . ."  Ackerman, 84 N.Y.2d at 541.

Accordingly, courts have held that claims for tax preparation errors accrue when the plaintiff receives the incorrectly prepared tax forms.  E.g., id. at 543 ("[P]laintiffs suffered no injury until they received the tax forms and schedules prepared by defendant; only upon receipt of the alleged negligently prepared tax documents could plaintiffs, as limited partners, rely upon defendant's professional skill and advice to their detriment. . . ."); Mitschele v. Schultz, 36 A.D.3d 249, 252 (1st Dep't 2006) ("claim . . . normally accrues, under Ackerman, upon receipt of negligently prepared tax documents"); cf. Lemle v. Regen, Benz & MacKenzie, C.P.A's, P.C., 165 A.D.3d 414, 415 (1st Dep't 2018) (concluding that plaintiff's "claim accrued in October 2013, when she filed the tax returns").

CPI argues that Plaintiffs' claims based on the misclassification of Verdere as a controlled foreign corporation accrued when CPI sent its emails about Verdere's tax status to Trustee Guy and financial manager Murray in September 2013.  (Def. Br. (Dkt. No. 30) at 14)

Because the Trustees waited until September 2017 to commence this action, CPI argues that any misclassification-based claims are time-barred.  (Id.)

Under the relevant case law, however, the AMS Trust was not injured – and could not have sued for professional malpractice – upon receipt of these emails from CPI.  Arnold, 334 F. App'x 349, 351-52 (accounting malpractice claim accrues when "'all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court'") (quoting Ackerman, 84 N.Y.2d at 541).  While CPI argues that accounting malpractice claims sometimes accrue upon receipt of advice or opinions (see Def. Br. (Dkt. No. 30) at 14; Def. Reply (Dkt. No. 33) at 8-9), the September 2013 emails at issue here are more in the nature of requests for information rather than tax advice or an opinion.  Cf. Arnold, 334 F. App'x at 352 ("[T]he three-year statute of limitations period began to run on the accounting malpractice claim against KPMG no later than May 13, 1998, the date when KPMG issued its formal opinion letter to Plaintiff."); Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP, 9 N.Y.3d 1, 4-8 (2007) ("[T]he Funds annually engaged defendant to perform . . . an audit of and opinion on each Fund's year-end financial statements. . . . [M]alpractice claims for the 1995 through 1999 audits accrued on the date the Funds received defendant's audit opinions.").

The Court concludes that the tax returns are the work product giving rise to the Trustees' malpractice claims, and not CPI's September 2013 emails.  As a result, Plaintiffs' misclassification-based claims did not accrue upon receipt of CPI's September 2013 emails.

CPI further contends, however, that Plaintiffs' claims based on the 2012 tax returns are time-barred for other reasons.  (Def. Br. (Dkt. No. 30) at 16-17)  Citing evidence outside the pleadings, CPI represents that it sent the Trustees the 2012 tax return in September 2013, and filed this return in October 2013.  (Id. at 16-17 (citing Brophy Decl., Exs. C-D (Dkt.

Nos. 31-3, 31-4))  The Complaint alleges that CPI "signed" the 2012 return in late September

2013 but is silent with respect to the filing date.  (Cmplt. (Dkt. No. 1) ¶ 27 (stating that CPI

signed the return "15 days" after September 12, 2013))

       The Trustees argue that even if they received the 2012 tax return outside the

statutory period, their claims based on the 2012 return are timely under the "continuous

representation doctrine."  (Pltf. Br. (Dkt. No. 32) at 24-27)  "'The continuous representation

doctrine is an exception to the statute of limitations and applies only where there is 'a mutual

understanding of the need for further representation on the specific subject matter underlying the

malpractice claim.'"  Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 461 (S.D.N.Y.

2010) (quoting Symbol Tech. Inc. v. Deloitte & Touche, LLP, 69 A.D.3d 191, 888 (2d Dep't

2009)).  "'[T]he mere recurrence of professional services does not constitute continuous

representation where the later services performed were not related to the original services. . . .'"

Anderson v. Greene, No. 14 Civ. 10249 (KPF), 2016 WL 4367960, at *23 (S.D.N.Y. Aug. 10,

2016), aff'd, 774 F. App'x 694 (2d Cir. 2019) (quoting Hall & Co., Inc. v. Steiner & Mondore,

543 N.Y.S.2d 190, 192 (3d Dep't 1989)).  "[T]he doctrine's application is limited 'to instances

where the professional's involvement after the alleged malpractice is for the performance of the

same or related services and is not merely continuity of a general professional relationship.'"  Id.

(quoting Muller v. Sturman, 79 A.D.2d 482, 483 (4th Dep't 1981)).

       Here, the Complaint alleges that the "parties understood that CPI was to perform

ongoing work until such time as someone determined that it would no longer carry out services

for the Trust or the related entities; it was understood that the relationship would continue, as a

level of trust had developed through time in CPI's work."  (Cmplt. (Dkt. No. 1) ¶ 22)  Thus, the

"Trust provided financial information to CPI on a continuing basis," including information about

Verdere and the income sharing and interest-free loans.  (Id. ¶¶ 23, 33)  The alleged errors at issue occurred over a three-year period – from 2013 to 2015 for work on the 2012, 2013, and 2014 tax returns – and relate to the same investment:  the AMS Trust's investment in Verdere.  (Id. ¶¶ 35, 44)  The Trustees' allegations, which the Court credits as true for purposes of resolving CPI's motion to dismiss, sufficiently invoke the continuous representation doctrine.  See Anwar, 728 F. Supp. 2d at 461 ("The [complaint] alleges that:  '[Defendant] continuously audited the Funds during this period, and [defendant] and the Funds had a mutual understanding that [defendant] would continue indefinitely to provide recurring auditing and related services to the Funds.' . . . The Court is persuaded that these averments, credited at the pleading stage without the development of a fuller factual record, sufficiently invoke the continuous representation doctrine.").

Booth v. Kriegel, 36 A.D.3d 312, 314 (1st Dep't 2006), cited by CPI (see Def. Br. (Dkt. No. 30) at 17 n.3; Def. Reply (Dkt. No. 33) at 10), is not to the contrary.  In Booth, the First Department found that the continuous representation doctrine was not applicable, because plaintiff had engaged the defendant "in a series of discrete and severable transactions."  Booth, 36 A.D.3d at 314 (internal quotation marks omitted); see also e.g., Williamson, 9 N.Y.3d at 10-11 (continuous representation doctrine inapplicable where "Funds entered into annual engagements with defendant for the provision of separate and discrete audit services for the Funds' year-end financial statements, and once defendant performed the services for a particular year, no further work as to that year was undertaken").  Moreover, defendant's errors in plaintiff's tax returns did not relate to "any particular investment or source of income"; instead, defendant "erroneously reported liability on [the plaintiff's] income generally."  Booth, 36 A.D.3d at 314.

Here, by contrast, the Complaint alleges an "ongoing" relationship built on "trust" that was expected to continue.  (Cmplt. (Dkt. No. 1) ¶ 22)  Pursuant to that "ongoing" relationship, over a three-year period, Plaintiffs regularly and routinely supplied financial information to CPI concerning the AMS Trust's investment in Verdere, and CPI repeatedly provided tax services to Plaintiffs related to the AMS Trust's equity interest in Verdere.  (Id. ¶¶ 23, 33, 35, 58)  Under similar circumstances, courts have found the continuous representation doctrine applicable.  See Anderson, 2016 WL 4367960, at *24 (finding "genuine issue of material fact regarding the parties' understanding of continuing work by Defendants . . . on Plaintiff's 2009 and 2010 tax returns, each of which may be deemed a 'particular transaction' governed by the doctrine of continuing representation"); Shared Commc'ns Servs., Inc. v. Goldenberg Rosenthal, LLP, No. 01 Civ. 9702 (RJH), 2004 WL 2609546, at *14 (S.D.N.Y. Nov. 16, 2004), modified, 2004 WL 3019770 (S.D.N.Y. Dec. 30, 2004), and aff'd, 155 F. App'x 561 (2d Cir. 2005) (applying continuous representation doctrine where defendants' work on "three specific transactions" continued into the statutory period); Apple Bank for Sav. v. Pricewaterhousecoopers, LLP, 18 Misc. 3d 1137(A), 859 N.Y.S.2d 892 (N.Y. Sup. Ct. 2008) (continuous misrepresentation applicable where "as in Ackerman and Zwecker, the malpractice claims are based on allegedly erroneous advice given, or reaffirmed, in successive years with regard to the tax treatment of a specific investment") (citing Ackerman v. Price Waterhouse, 252 A.D.2d 179 (1st Dep't 1998)); Zwecker v. Kulberg, 209 A.D.2d 514 (2d Dep't 1994)).

At this stage of the proceedings, this Court cannot find as a matter of law that the continuous representation doctrine is inapplicable and that claims based on the 2012 tax returns are time-barred.

2.    **Misclassification of Verdere**

CPI argues that the Trustees have failed to state a claim for accounting

malpractice based on the alleged misclassification of Verdere as a controlled foreign corporation.

(Def. Br. (Dkt. No. 30) at 11-14)  "To establish an accounting malpractice claim, the injured

party must show:  (1) the accountant's conduct fell below the accepted standard of practice; and

(2) the accountant's conduct was a proximate cause of the alleged injuries."  Pennington, 2019

WL 6498346, at *4 (internal quotation marks omitted); see also KBL, LLP v. Cmty. Counseling

& Mediation Servs., 123 A.D.3d 488, 488 (1st Dep't 2014).  "'[E]xpert testimony is normally

required to establish the applicable standard of practice and, in an appropriate case, to determine

whether an alleged deviation from that standard was the proximate cause of a plaintiff's

injuries.'"  Pennington, 2019 WL 6498346, at *4 (quoting Berk v. St. Vincent's Hosp. & Med.

Ctr., 380 F. Supp. 2d 334, 343 (S.D.N.Y. 2005)).

CPI argues that the Trustees were obligated to inform CPI that the AMS Trust had

made an IRS check-the-box election that made Verdere a partnership for tax purposes.  (Def. Br.

(Dkt. No. 30) at 11-12)  Because the Trustees did not disclose this information, CPI argues that

they could not have reasonably relied on CPI's advice.  (Id. at 12-13)  According to CPI, the

Trustees are now seeking to hold CPI liable for "their own failure to respond to CPI's repeated

request for information regarding entity classification."  (Id. at 14)

In the Complaint, however, the Trustees contend that CPI was obligated to ask the

Trustees whether the AMS Trust had ever filed an election with the IRS:

> CPI needed to ask one factual question to determine the entity's proper
> classification:  has Verdere ever filed an election with the IRS?  Posing this
> question to the Trustees (or requesting comprehensive paperwork about Verdere)
> would have resulted in the simple answer that yes, Verdere had filed an election
> with the IRS, and it had elected to classify itself as a disregarded entity.  By
> failing to seemingly ever ask the Trustees this basic, yet critical, question that

would singlehandedly determine the classification of Verdere, CPI caused the
Trust to suffer significant damages.

(Cmplt. (Dkt. No. 1) ¶ 41)

At this stage of the proceedings, this Court cannot resolve as a matter of
law which side was at fault with respect to the disclosure of the check-the-box election.
Although CPI cites to 31 C.F.R. § 10.34 – which authorizes tax practitioners to "rely in
good faith without verification upon information furnished by the client" – that regulation
also states that practitioners "must make reasonable inquiries if the information as
furnished appears to be . . . incomplete."  31 C.F.R. § 10.34(d)

Absent evidence regarding the applicable standard of care, this Court is in
no position to decide where the fault lies.  And the issue may, in any event, ultimately be
for the jury.  See Pennington, 2019 WL 6498346, at *4 ("expert testimony is required to
establish the applicable standard of care," and whether a deviation from the standard
occurred "is typically reserved for the jury") (citing Rubens v. Mason, 387 F.3d 183, 189
(2d Cir. 2004)).

## CONCLUSION

Defendant's motion to dismiss is granted in part and denied in part as set forth above.  The Clerk of Court is directed to terminate the motion (Dkt. No. 29).  The Court will hold a case management conference on **June 18, 2020 at 10:30 a.m.**  By **June 11, 2020**, the parties shall file a joint status letter and a proposed case management plan.  A model case management plan is available on the Court's website (https://nysd.uscourts.gov/hon-paul-g-gardephe).

Dated: New York, New York
       May 4, 2020

                                        SO ORDERED.

                                        _____
                                        Paul G. Gardephe
                                        United States District Judge